UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
ARIEL O. VELASQUEZ,                 )
                                    )
     Plaintiff,                     )
                                    )
     v.                             )   C.A. No. 21-352 WES
                                    )
WARDEN DANIEL MARTIN et al.,        )
                                    )
     Defendants.                    )
_____)

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is a Motion for Judgment on the Pleadings, ECF No. 22, filed by seven Defendants, and pro se Plaintiff Ariel Velasquez's Motion to Appoint Counsel, ECF No. 23. In this case, Plaintiff asserts five claims against Warden Daniel Martin and eight other employees of the Donald W. Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island, arising out of an alleged instance of discrimination on the basis of religion. He alleges violations of 42 U.S.C. §§ 1983, 1985, and 1986, the Religious Land Use and Institutional Persons Act of 2000 ("RLUIPA"), and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The claims against Warden Martin have been dismissed. Text Order, July 1, 2022. Now, seven of the eight remaining Defendants have moved for judgment on the pleadings. For the reasons that follow, Defendants' Motion for

Judgment on the Pleadings, ECF No. 22, is GRANTED as to Count I of the Complaint as to Defendants Damasco, Nessinger, Kropman, Cepeda, Santos, and Williams, and DENIED as to Defendant Gomes. Further, Defendants' motion is GRANTED as to Counts II, III, IV, and V of the Complaint as to all seven moving Defendants. Finally, Plaintiff's Motion to Appoint Counsel, ECF No. 23, is DENIED without prejudice.

I.  Background

Plaintiff, a detainee at Wyatt, is a practicing Muslim. Compl. ¶¶ 1, 11. While incarcerated, he assisted another detainee at Wyatt in converting to Islam, signing up for Muslim services, and changing his religion in the Wyatt records. Id. at ¶ 12. Sometime after, Defendant Michael Kropman, a Christian pastor, called the detainee into a meeting and, with Defendant Nicole Cepeda, a counselor at the Wyatt, acting as translator, made negative comments about his conversion. Id. at ¶¶ 10, 13-15.

After the meeting, the detainee asked Plaintiff for assistance in filing a complaint because he felt that he had been harassed. Id. at ¶ 16. Plaintiff filed an informal grievance on the detainee's behalf and requested a meeting with Kropman and Defendant Kristen Damasco, the Programs Director at Wyatt. Id. at ¶ 17.

Within hours of Plaintiff filing the grievance, Defendants Joseph Williams and Antonio Santos informed him that he was under

investigation, for the duration of which he would be placed in restrictive housing. Id. at ¶¶ 18-22. Williams and Santos further informed Plaintiff that the decision to place him in restrictive housing was made by Defendant Mark Gentile, a U.S. Marshal Monitor at the Wyatt. Id. at ¶¶ 8, 21. Defendant Stephen Gomes approved the administrative detention placement order. Id. at ¶ 23.

When Plaintiff arrived at restrictive housing, he contacted Martin and Damasco and informed them that he was experiencing discrimination, harassment, and retaliation. Id. at ¶¶ 24-25. Martin and Damasco took no action other than to inform Plaintiff that an investigation was being conducted. Id. at ¶ 26.

After about a week in restrictive housing, Martin informed Plaintiff that the investigation showed no rule, policy, legal, regulatory, or statutory violations by Plaintiff, and he was released from restrictive housing. Id. at ¶ 28. Plaintiff filed a grievance, which was denied by Defendant Michael Nessinger, the Wyatt's chief of security, at the initial level and by Martin on appeal. Id. at ¶¶ 30-31.

Plaintiff filed this action in August 2021 alleging that all Defendants violated 42 U.S.C. §§ 1983, 1985, 1986, RLUIPA, and Bivens. See Compl. ¶¶ 33-39. In December 2021, Warden Martin moved to dismiss. See ECF No. 11. The Court granted the motion, concluding that Plaintiff had failed to state a claim against Martin. See Text Order, July 1, 2022. Upon prompting from the

Court, seven of the eight remaining defendants filed answers, see ECF Nos. 19, 21, and subsequently filed the present motion for judgment on the pleadings, see ECF No. 22. Plaintiff did not file a response to the motion but filed a motion to appoint counsel shortly thereafter. See ECF No. 23.

## II. Legal Standard

The standard of review for a motion for judgment on the pleadings filed under Rule 12(c) is the same as the standard for a Rule 12(b)(6) motion: the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (motion to dismiss standard); see Doe v. Brown Univ., 896 F.3d 127, 130 (1st Cir. 2018) (motion for judgment on the pleadings standard). The Court "take[s] the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant." Doe, 896 F.3d at 130 (quoting Kando v. R.I. State Bd. Of Elections, 880 F.3d 53, 58 (1st Cir. 2018)). Given Plaintiff's pro se status, the Court reads the Complaint liberally. Rodi v. So. New Eng. Sch. Law, 389 F.3d 5, 13 (1st Cir. 2004).

## III. Analysis

### A. Section 1983 Claim

To survive a motion to dismiss or a motion for judgment on the pleadings on a § 1983 retaliation claim, a plaintiff must assert facts demonstrating that "[(1)] he engaged in a protected

4

activity, [(2)] that the [defendant(s)] took an adverse action against him, and that [(3)] there is a causal link between the former and the latter." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "An action is considered adverse for retaliation purposes if it would deter a person of ordinary firmness from the exercise of a right at stake." Grossman v. Martin, 566 F. Supp. 3d 136, 144 (D.R.I. 2021) (quoting Price v. Wall, 464 F. Supp. 2d 90, 97 (D.R.I. 2006)). Plaintiff has sufficiently alleged that he engaged in a protected activity for purposes of a retaliation claim -- filing a grievance on behalf of his fellow detainee, see Price, 464 F. Supp. 2d at 96-97 -- which Defendants do not dispute, see Defs.' Mot. J. Pleadings 4 ("Defs.' Mot."), ECF No. 22.[1]

1. Defendants Damasco, Nessinger, Kropman, and Cepeda

Plaintiff's claims against Defendants Damasco, Nessinger, Kropman, and Cepeda fail on the second prong. Plaintiff alleges that Damasco did nothing after Plaintiff informed her that he was experiencing harassment and retaliation, Compl. ¶¶ 25-26, and that

---

[1] Section 1983 provides a cause of action only against defendants acting under color of state law. See 42 U.S.C. § 1983; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). Following a detailed discussion of the creation and governance of Wyatt, the court in Lacedra v. Donald W. Wyatt Det. Facility concluded that "Defendants acted under color of state law when they carried on the traditional public function of prison operations at the Wyatt Facility." 334 F. Supp. 2d 114, 121-22, 140 (D.R.I. 2004). Other decisions in this district have followed Lacedra. See Mathew v. Central Falls Det. Facility Corp., C.A. No. 09-253S, 2011 WL 6056713, at *8 (D.R.I. Sept. 30, 2011) (collecting cases); see also discussion infra at part III.E.

5

Nessinger denied his grievance on appeal, id. at ¶ 30. Against Defendants Kropman and Cepeda, he alleges only that Kropman made negative comments to Plaintiff's fellow detainee concerning his conversion to Islam and that Cepeda acted as translator for the conversation. Id. at ¶¶ 13-15. None of these alleged acts constitute "adverse action" taken against Plaintiff sufficient to support a claim under § 1983. See Hannon, 645 F.3d at 48.

Further, although Plaintiff alleges that Defendant Nessinger is responsible for "overseeing the entire jail as well as its investigations and is responsible for knowing all policies regarding security," Compl. ¶ 27, he has not stated a claim for supervisory liability against Nessinger because he has not alleged "an affirmative link between the abridgment [of his constitutional rights by another defendant] and some action or inaction on the supervisor's part." Parker v. Landry, 935 F.3d 9, 14-15 (1st Cir. 2019) ("Facts showing no more than a supervisor's mere negligence vis-à-vis his subordinate's misconduct are not enough to make out a claim of supervisory liability.").

2. Defendants Santos and Williams

Plaintiff alleges that Defendants Santos and Williams informed Plaintiff about the investigation and told him that he would be placed in restrictive housing while the investigation was ongoing. Compl. ¶¶ 19-21. He does not, however, allege that either of these Defendants were involved in the making of this

6

decision, and in fact specifically attributes the decision to Defendant Gentile. See id. at ¶ 21. He also does not allege that these Defendants took any affirmative steps to place him in restrictive housing, other than communicating the decision to him. See id. at ¶ 19-21. Plaintiff has therefore failed to state a § 1983 claim against Defendants Santos and Williams.

3. Defendant Gomes

Plaintiff alleges that Gomes approved the administrative detention order placing Plaintiff in restrictive housing. Compl. ¶ 23. Placement in restrictive housing "would deter a person of ordinary firmness from the exercise of a right," in this case, filing a grievance. Grossman, 566 F. Supp. 3d at 144 (quoting Price, 464 F. Supp. 2d at 97). It is reasonable to infer from Plaintiff's allegations that approval of the placement order by Defendant Gomes was a necessary step in his placement in restrictive housing and that, therefore, the approval itself constitutes an adverse action. As to the third prong, "a chronology of events" may suffice to "support . . . an inference of retaliation." McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). Here, the chronology of Plaintiff's allegations, specifically that he was placed in restrictive housing just hours after filing the grievance, Compl. ¶¶ 18-22, suffices to establish a causal connection between the protected activity and the adverse action. See McDonald, 610 F.2d at 18.

7

Defendant Gomes relies on Knox v. Butler, No. 17-cv-00092-DRH, 2017 WL 476925 (S.D. Ill. Feb. 6, 2017) to support his claim that Plaintiff has failed to connect the alleged retaliatory conduct with Defendant Gomes. Defs.' Mot. 6. In Knox, the plaintiff alleged that the decision to transfer him to a more restrictive cell in retaliation for filing grievances "came from a 'higher authority,'" and not from one of the named defendants. Knox, 2017 WL 476925, at *4. Because the plaintiff "fail[ed] to connect the retaliation with any particular defendant," the court concluded that the plaintiff's claim of retaliation was not viable. Id. at *9. Here, however, Plaintiff has alleged personal involvement on the part of Defendant Gomes in bringing about the adverse action by approving the detention order, providing the necessary causal connection. Therefore, construing the Complaint liberally because of Plaintiff's pro se status, see Rodi, 389 F.3d at 13, Plaintiff's factual allegations against Defendant Gomes are sufficient to state a claim for retaliation under § 1983.

B. Section 1985(3)[2]

"Section 1985 provides a remedy for acts of civil conspiracy in which two or more individuals conspire for the purpose of depriving another of rights or privileges accorded to them by law."

---

[2] Section 1985 has three subsections, of which only subsection (3) could apply here. Accordingly, the Court treats this claim as one brought pursuant to 42 U.S.C. § 1985(3).

8

Alston v. Int'l Assoc. of Firefighters, Local 950, 998 F.3d 11, 35 (1st Cir. 2021) (quoting Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021)). A Plaintiff asserting a claim under section 1985(3) must allege: (1) a conspiracy; (2) "conspiratorial purpose to deprive the plaintiff of the equal protection of the laws"; (3) "an overt act in furtherance of the conspiracy"; and (4) "injury to person or property, or a deprivation of a constitutionally protected right." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). "[A] plaintiff seeking to allege such a conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights." Parker, 935 F.3d at 18. "Without direct evidence of such an agreement . . . the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." Id. Furthermore, "the agreement must involve 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). The First Circuit has "assume[d], without deciding, that discrimination based on religion constitutes a deprivation of equal protection of the laws." See LeBaron v. Spencer, 527 Fed. Appx. 25, 33 (1st Cir. 2013) (citing Brown v. Reardon, 770 F.2d 896, 906 (10th Cir. 1985)).

1. Defendants Damasco, Nessinger, Kropman, and Cepeda

Plaintiff alleges only that Defendant Damasco did nothing in response to Plaintiff informing her that he was being discriminated against, Compl. ¶¶ 25-26, and that Defendant Nessinger denied his grievance on appeal, id. ¶ 30. He has alleged no facts demonstrating that either Defendant was part of an agreement with other alleged conspirators, nor has he alleged any facts from which the Court could infer their involvement in such an agreement. Similarly, he alleges only that Defendant Kropman harassed a fellow detainee after Plaintiff helped him convert to Islam, id. ¶ 14-15, and that Defendant Cepeda translated the conversation, id., from which the Court cannot reasonably infer the existence of an agreement to deprive Plaintiff of his rights. Therefore, Plaintiff fails to state a § 1985(3) claim against these Defendants.

2. Defendants Santos, Williams, and Gomes

Although Plaintiff seems to allege that some communication occurred among Defendants Santos, Williams, and Gomes, and that they also communicated with Defendant Gentile about the investigation and Plaintiff's placement in restrictive housing, see Compl. ¶¶ 20-23, the allegations fall short of stating a claim for conspiracy under § 1985(3). Plaintiff does not specifically allege that a conspiracy existed, nor does he explain how Defendants allegedly conspired with one another. Further, even if Plaintiff successfully alleged the existence of a conspiracy, he

10

fails to connect the agreement to a "class-based, invidiously discriminatory animus behind the conspirators' action." Parker, 935 F.3d at 18. While the factual allegations suffice to connect Plaintiff's placement in restrictive housing with his filing a grievance on behalf of another detainee, see McDonald, 610 F.2d at 18, he has not alleged facts from which the Court could infer that his placement in restrictive housing was a result of his religious activities and religious animus on the part of the Defendants. Therefore, Plaintiff has not stated a claim under § 1985(3).

C. Section 1986 Claim

"Section 1986 is a companion to [§] 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action." Lyon v. Temple Univ. of Com. Sys. Higher Ed., 507 F. Supp. 471, 479 (E.D. Penn. 1981). "[A]bsent a showing of conspiracy, [a plaintiff] has no claim under § 1986, which extends liability to those who knowingly failed to prevent conspiracies under § 1985." Gibbs v. N.H. Dep't of Corr. Comm. Helen Hanks, 561 F. Supp. 3d 139, 150 (D.N.H. 2021). Here, because Plaintiff has failed to state a claim under § 1985(3), his claim under § 1986 necessarily must fail.

D. RLUIPA Claim

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore

11

dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). The statute prohibits the government from imposing "a substantial burden" on a detainee's religious exercise unless it demonstrates that the imposition is both "in furtherance of a compelling interest" and "the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a).

"[A] RLUIPA plaintiff bears the burden of demonstrating that he or she wishes to engage in '(1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government.'" LeBaron v. Spencer, 527 Fed. Appx. 25, 28 (1st Cir. 2013) (quoting Abdulhaseeb v. Calbone, 600 F.3d 1301, 1312 (10th Cir. 2010)). A "substantial burden" is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Spratt v. R.I. Dept. of Corr., 482 F.3d 33, 38 (1st Cir. 2007) (internal quotation marks and citation omitted).

"As an inmate in a state correctional facility, [Plaintiff] is an institutionalized person within the definition of RLUIPA." Id. Plaintiff's assisting his fellow detainee in converting to Islam is "a religious exercise" that is "motivated by a sincerely held belief." LeBaron, 527 Fed. Appx. at 28; see Compl. ¶ 11. However, Plaintiff has failed to allege any facts suggesting that

12

the Wyatt had a prison policy which substantially burdened his religious practice or that any Defendants took specific actions that burdened his religious practice or put "pressure on [him] to modify his behavior and to violate his beliefs." Spratt, 482 F.3d at 38. Therefore, Plaintiff's RLUIPA claim fails.

E. Bivens Claim

Under Bivens, "a federal agent acting under color of his authority" may be liable for money damages for violating a plaintiff's constitutional rights. 403 U.S. at 389. Consistent with the requirements of Bivens, Plaintiff asserts this claim against "all Defendants who are deemed to be a Federal Employee who violated Plaintiff's Constitutional rights." Compl. ¶ 39. Defendants contend that they are not federal employees and therefore cannot be liable under Bivens. Defs.' Mot. 10-11.

In Lacedra v. Donald W. Wyatt Detention Facility, the court concluded that "Defendants acted under color of state law when they carried on the traditional public function of prison operations at the Wyatt Facility." 334 F. Supp. 2d 114, 140 (D.R.I. 2004). Although the court reached the opposite conclusion the year before in Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52, 59-60 (D.R.I. 2003) (employees of the Wyatt were federal actors for purposes of Bivens), other decisions in this district have followed Lacedra. See Mathew v. Central Falls Det. Facility Corp., C.A. No. 09-253S, 2011 WL 6056713, at *8 (D.R.I. Sept. 30,

13

2011) (collecting cases). In addition, although the First Circuit has not addressed the issue, the Fourth, Tenth, and Eleventh Circuits, as well as a handful of district courts, have held that employees of a private prison are not federal actors for the purpose of Bivens. See id. (collecting cases). Therefore, because Defendants are not federal actors, they cannot be liable under Bivens.

F. Motion to Appoint Counsel

"The law is well established that there is no constitutional right to appointment of counsel in a civil case." Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986). Under 28 U.S.C. § 1915(d), however, a district court has "discretion to appoint counsel to an indigent litigant in appropriate circumstances." Id. The First Circuit and other courts have concluded that "an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel."[3] Id. (collecting cases). "Some factors which courts have found to bear on the question of exceptional circumstances in a particular case include the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; the complexity of the factual and legal issues involved; and the

---

[3] "[T]he Second, Third, Seventh, and Eighth Circuits have chosen not to read such a requirement into the statute." Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997).

14

capability of the indigent litigant to present the case." Id. at 3 (internal citations omitted). Plaintiff contends that, here, potential discovery issues, including difficulty acquiring evidence from the prison administration, conducting an investigation, and receiving testimony from Defendants constitute exceptional circumstances that justify the appointment of counsel. Pl.'s Mot. Appointment Counsel 2, ECF No. 23.

"Although the Court acknowledges the difficulty [Plaintiff] will face in prosecuting his case from prison, such difficulties are commonly faced by prisoner litigants and do not, in and of themselves, present an 'extraordinary circumstance.'" Rice v. Resendes, No. 17-11059-LTS, 2021 WL 783957, at *2 (D. Mass. Mar. 1, 2021); see McCauley v. Groblewski, No. 18-2167, 2020 WL 6265069, at *8 (1st Cir. July 28, 2020) (affirming district court's conclusion that inability "to effectively investigate the facts and pursue discovery from prison" did not constitute exceptional circumstance warranting appointment of counsel). In addition, Plaintiff's remaining claims do not present "highly unique or novel questions of law," Hannon v. Beard, 661 F. Supp. 2d 87, 91 (D. Mass. 2009) (denying motion to appoint counsel for § 1983 claim), and Plaintiff has not indicated that any physical or mental difficulties would prevent him from presenting the case; rather, he has demonstrated an impressive familiarity with the legal process and has submitted cogent and well-researched filings in

this litigation. See Niemic v. Maloney, 448 F. Supp. 2d 270, 281 (D. Mass. 2006) (denying motion to appoint counsel where plaintiff "seem[ed] fully capable of conducting fact investigation, appropriately filing court documents and understanding and asserting legal claims").

Therefore, Plaintiff's motion for appointment of counsel is DENIED without prejudice. "The [C]ourt may reconsider this ruling . . . if the [Plaintiff] demonstrates that a lack of counsel sufficiently weakens his ability to investigate and develop the relevant facts so as to constitute 'exceptional circumstances.'" Lucien v. Spencer, 534 F. Supp. 2d 207, 211 (D. Mass. 2008).

IV.  Conclusion

Defendants' Motion for Judgment on the Pleadings, ECF No. 22, is GRANTED as to Count I of the Complaint with respect to Defendants Damasco, Nessinger, Kropman, Cepeda, Santos, and Williams, and DENIED with respect to Defendant Gomes. Defendants' Motion for Judgment on the Pleadings is GRANTED as to Counts II, III, IV, and V of the Complaint. Plaintiff's Motion to Appoint Counsel, ECF No. 23, is DENIED without prejudice.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: March 1, 2023

16